**Case No. 3:24-cv-01479-S**

---

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION

---

## IN RE HIGHLAND CAPITAL MANAGEMENT, L.P.,
### *Debtor*

---

## NEXPOINT REAL ESTATE PARTNERS, LLC (F/K/A HCRE PARTNERS, LLC)

### *Appellants*

### v.

## HIGHLAND CAPITAL MANAGEMENT, L.P.

### *Appellee*

---

On Appeal from the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, Case No. 19-34054-slg
The Honorable Judge Jernigan, Presiding

---

### APPELLANT'S OPENING BRIEF

---

Amy L. Ruhland
Texas Bar No. 24043561
**REICHMAN JORGENSEN LEHMAN & FELDBERG LLP**
515 Congress Ave, Suite 1900
Austin, TX 78701
Tel.: (737) 227-3102
aruhland@reichmanjorgensen.com

Charles W. Gameros, Jr., P.C.
Texas Bar No. 00796956
**HOGE & GAMEROS. L.L.P.**
6116 North Central Expressway, Suite 1400
Dallas, Texas 75206
Tel.: 214-765-6002
bgameros@legaltexas.com

## CERTIFICATE OF INTERESTED PERSONS AND  CORPORATE DISCLOSURE STATEMENT

Under Federal Rule of Civil Procedure 7.1, Federal Rule of Bankruptcy Procedure 8012(c)(2), and Local Rules 3.1(c), 3.2(e), 7.4, 81.1(a)(4)(D), and 81.2, Appellant NexPoint Real Estate Partners LLC (f/k/a HCRE Partners, LLC) provides the following information:

1.   The following nongovernmental corporate parties owns 10% or more of the stock of Appellant NexPoint Real Estate Partners, LLC (f/k/a HCRE Partners, LLC):

   • The Dugaboy Investment Trust, holding 70% ownership

   • Highland Capital Management Real Estate Holdings I, LLC, holding 25% ownership

2.   The following persons and entities are financially interested in the outcome of the case:

Appellant:
NexPoint Real Estate Partners, LLC (f/k/a HCRE Partners, LLC)

Counsel for Appellant:
Amy L. Ruhland
*Reichman Jorgensen Lehman & Feldberg LLP*

Charles W. Gameros Jr.
*Hoge & Gameros L.L.P.*

Appellee:
Highland Capital Management, L.P.

Counsel for Appellee:
John A. Morris
Jeffery N. Pomerantz
Gregory V. Demo
Hayley R. Winograd
*Pachulski Stang Ziehl & Jones LLP*

# TABLE OF CONTENTS

**Page**

STATEMENT OF JURISDICTION...................................................................1

INTRODUCTION ..........................................................................................2

ISSUES PRESENTED......................................................................................3

I.    STATEMENT OF THE CASE ................................................................4

    A.    The Parties...................................................................................4

    B.    HCRE Files a Single, Indefinite Proof of Claim in the Highland
         Bankruptcy ...................................................................................6

    C.    Highland Objects to the POC, and HCRE Hires Independent Counsel to
         Pursue the Claim .........................................................................7

    D.    Highland Belatedly Moves to Disqualify HCRE's Counsel, Triggering
         Months of Litigation ....................................................................9

    E.    HCRE Retains New Counsel, and the Parties Engage in Discovery......10

    F.    HCRE Moves to Withdraw the POC, Highland Objects, and the
         Bankruptcy Court Denies the Motion ..........................................11

    G.    The Bankruptcy Court Denies HCRE's Motion to Withdraw and Forces
         HCRE to Defend Itself in an Evidentiary Hearing .................................19

    H.    The Bankruptcy Court Disallows HCRE's POC, and Highland Files its
         Bad Faith Motion ......................................................................20

    I.    The Bankruptcy Court Grants Highland's Request for a Bad Faith
         Finding and Sanctions and Denies Reconsideration..............................22

II.   STANDARD OF REVIEW ..................................................................26

III.  SUMMARY OF THE ARGUMENT ....................................................27

IV.   ARGUMENT AND AUTHORITIES....................................................30

    A.    The Bankruptcy Court Erred in Issuing the Sanctions Order ................30

        1.    There Is No Clear and Convincing Evidence to Support the
            Bankruptcy Court's Bad Faith Findings and Invocation of its
            Inherent Powers ........................................................................31

            a.  HCRE did not file the POC in bad faith.....................................32

            b.  HCRE did not pursue the POC in bad faith................................33

         2.    The Bankruptcy Court's Punitive Sanction Exceeded its Authority

i

       Under Bankruptcy Code § 105 .........................................................41

  B.  The Bankruptcy Court Doubled Down on Its Errors in Denying
      Reconsideration......................................................................................45

CONCLUSION ...........................................................................................................49

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991)..........................................................................................41

*Chaves v. M/V Medina Star*,
  47 F.3d 153 (5th Cir. 1995) ...........................................................................27

*In re Cushman*,
  589 B.R. 469 (Bankr. D. Me. 2018) ..........................................................32, 33

*In re Evergreen Sec., Ltd.*,
  570 F.3d 1257 (11th Cir. 2009) ......................................................................27

*Ex Parte Garland*,
  731 U.S. 333 (1866).........................................................................................15

*In re Highland Capital Mgmt., L.P.*,
  Case No. 19-cv-34054-sgj (Bankr. N.D. Tex.), Dkt. 3......................4, 24, 43, 44

*In re Highland Capital Mgmt., L.P.*,
  NO. 19-34054-sgj11 (Bankr. N.D. Tex.), Dkt. 1943........................................13

*LeCompte v. Mr. Chip, Inc.*,
  528 F.2d 601 (5th Cir. 1976) ...........................................................................12

*In re Lowenschuss*,
  67 F.3d 1394 (9th Cir. 1995), cert. denied 517 U.S. 1243 (1996)...............38, 40

*In re Moore*,
  739 F.3d 724 (5th Cir. 2014) .....................................................................*passim*

*Robles v. Atl. Sounding Co.*,
  77 F. App'x 274 (5th Cir. 2003) (per curiam) .................................................12

*In re Skyport Glob. Commc'n, Inc.*,
  642 F. App'x 301 (5th Cir. 2016)......................................................................27

*In re Snyder*,
    472 U.S. 634 (1985)..................................................................................15, 18

*The Charitable DAF Fund, L.P. v. Highland Capital Mgmt., L.P.*,
    98 F.4th 170 (5th Cir. 2024) ...........................................................41, 42, 43, 44

## Federal Statutes

11 U.S.C. § 105 ................................................................................*passim*

28 U.S.C. § 157(b)(1) and (b)(2)(A), (B), and (O) .....................................................1

28 U.S.C. § 158(a)(1) ....................................................................................1

United States Code Title 11 Chapter 11 .............................................................4, 5

## Rules

Fed. R. Bankr. P. 3006 ..............................................................................13, 47

Fed. R. Bankr. P. 8002(a)(1) ..........................................................................26

Fed. R. Bankr. P. 8015(a)(5) ..........................................................................51

Fed. R. Bankr. P. 8015(a)(7)(B) .......................................................................51

Fed. R. Bankr. P. 8015(h) .............................................................................51

Fed. R. Bankr. P. 9011 ...........................................................................8, 14, 34

Fed. R. Bankr. P. 9024 .................................................................................1

Fed. R. Civ. P. 60(b)(1) and (6) .......................................................................1

## Other Authorities

https://www.veritaglobal.net/HCMLP .....................................................................4

## STATEMENT OF JURISDICTION

The United States Bankruptcy Court for the Northern District of Texas, Dallas Division exercised jurisdiction under 28 U.S.C. § 157(b)(1) and (b)(2)(A), (B), and (O).  On March 5, 2024, the United States Bankruptcy Court for the Northern District of Texas, Dallas Division entered its Memorandum Opinion and Order Granting Highland Capital Management, L.P.'s Motion for (A) Bad Faith Finding and (B) Attorneys' Fees Against NexPoint Real Estate Partners, LLC (f/k/a HCRE Partners, LLC) in Connection with Proof of Claim # 146 ("Sanctions Order").  On March 20, 2024, Appellant NexPoint Real Estate Partners, LLC (f/k/a HCRE Partners, LLC) ("HCRE") timely filed a notice of appeal of the Sanctions Order.  ROA.000001–74.

On March 18, 2024, pursuant to Federal Rule of Bankruptcy Procedure 9024, HCRE timely filed a Motion for Relief from Order seeking reconsideration of the Sanctions Order.  ROA.011458.  On May 21, 2024, the Bankruptcy Court issued its Order Denying Motion of NexPoint Real Estate Partners, LLC (f/k/a HCRE Partners, LLC) Seeking Relief from Order Pursuant to Fed. R. Bankr. P. 9024 and Fed. R. Civ. P. 60(b)(1) and (6) ("Reconsideration Order").  ROA.011545.  On June 4, 2024, HCRE timely filed an amended notice of appeal seeking review of the Reconsideration Order in addition to the Sanctions Order.  ROA.000075.

Accordingly, this Court has jurisdiction under 28 U.S.C. § 158(a)(1) over this appeal from a final decision of the Bankruptcy Court.

1

## INTRODUCTION

This appeal stems from an order issued by the Bankruptcy Court sanctioning Appellant HCRE approximately $825,000 for filing a single proof of claim in bankruptcy.  In issuing the Sanctions Order, the Bankruptcy Court reasoned that, because HCRE's President, Jim Dondero, did not personally investigate the claim or read the claim form prior to authorizing outside counsel to affix his electronic signature to the claim, HCRE must have acted in bad faith in filing the claim.  The Bankruptcy Court reached that conclusion even though nobody has ever suggested that the proof of claim was inaccurate or false in any way.  The Bankruptcy Court further determined that HCRE pursued the proof of claim in bad faith, notwithstanding its employment of sophisticated outside counsel and notwithstanding HCRE's attempt to withdraw the proof of claim with prejudice — among other conditions on which the Bankruptcy Court insisted—months before any potential evidentiary hearing on the claim.  The Bankruptcy Court refused to allow the claim's withdrawal, forcing HCRE to continue discovery and attend an evidentiary hearing it tried to avoid.  Nonetheless, the Bankruptcy Court concluded that HCRE should pay the bulk of the fees and costs Appellee Highland Capital Management, L.P. ("Highland") incurred in connection with the claim.

As the evidence conclusively demonstrates, the only reason that Highland incurred more than $825,000 in fees and costs is because Highland chose to continue

2

down an unnecessary warpath, and the Bankruptcy Court facilitated that endeavor. The Bankruptcy Court's resulting punitive sanctions award against HCRE lacks any basis in evidentiary reality or law and should be reversed.

## ISSUES PRESENTED

1.     On de novo review, is there clear and convincing evidence that HCRE filed Proof of Claim # 146 (the "POC") in bad faith when it is undisputed that HCRE acted on the advice of counsel in filing the POC, where the POC explicitly disclosed that it was indefinite and dependent upon discovery, and where there is no evidence that anything in the POC was false or inaccurate at the time of filing?

2.     On de novo review, is there clear and convincing evidence that HCRE pursued the POC in bad faith, even though Highland's sanctions motion did not make that argument and despite HCRE's indisputably attempting to withdraw the POC with prejudice before the close of discovery and well in advance of any evidentiary hearing on the POC?

3.     Did the Bankruptcy Court abuse its discretion under Bankruptcy Code § 105 by awarding Highland the fees it incurred after thwarting HCRE's request for a with-prejudice withdrawal of the POC on the theory that HCRE caused those fees?

4.     Did the Bankruptcy Court abuse its discretion in denying reconsideration of its Sanctions Order?

3

## I.     STATEMENT OF THE CASE

This appeal arises from an order of the Bankruptcy Court invoking its inherent powers under 11 U.S.C. § 105 to sanction HCRE more than $825,000 for HCRE's supposed "bad faith" in filing and pursuing a single proof of claim in bankruptcy. The history of that proof of claim, and the procedural turmoil that followed, are central to the issues on appeal.

### A.     The Parties

Highland filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code on October 16, 2019.  *In re Highland Capital Mgmt., L.P.*, Case No. 19-cv-34054-sgj (Bankr. N.D. Tex.), Dkt. 3.[1]  Prior to bankruptcy, Highland's business consisted primarily of advising investors and managing investments totaling billions of dollars.   ROA.001387.   Highland managed some of these investments through shared services agreements with certain affiliated entities. ROA.001387.

In the summer of 2018, pursuant to a shared services agreement with one of these affiliates, Highland created a joint venture called SE Multifamily Holdings, LLC ("SE Multifamily).   ROA.001388–89.   SE Multifamily was governed by a Limited Liability Company Agreement ("LLC Agreement") and was created to hold

---

[1] All references to "Dkt." are to docket entries in the Highland bankruptcy case, and which can be located at https://www.veritaglobal.net/HCMLP.

a portfolio of 26 properties being acquired.  ROA.001388.  To obtain third-party financing for the property acquisitions, HCRE (as lead borrower), Highland, and five other entities agreed to become co-borrowers on a bridge loan for about half the total purchase price.  ROA.001389.

Several months after the transaction closed, SE Multifamily's LLC Agreement was amended retroactive to its original effective date ("Amended LLC Agreement").  Dkt. 2279 at 6.  Highland prepared the Amended LLC Agreement, which reflected membership interests grossly inconsistent with the parties' respective capital contributions.  *Id.*  Specifically, Schedule A to the Amended LLC Agreement reflected capital contributions and membership interests as follows:

<u>Schedule A</u>

**Capital Contributions and Percentage Interests**

| Member Name | Capital Contribution | | Percentage Interest |
|---|---|---|---|
| HCRE Partners, LLC | $ | 291,146,036 | 47.94% |
| Highland Capital Management, L.P. | $ | 49,000 | 46.06% |
| BH Management | $ | 21,213,721 | 6.00% |

HCRE filed a claim in the bankruptcy because it believed the organizational documents relating to SE Multifamily improperly allocated the members' ownership percentages.  *Id.* at 7.  In pursuing its POC, HCRE argued that the parties intended to further amend the LLC Agreement to reallocate ownership interests in SE Multifamily to reflect the members' relative capital contributions to the company. ROA.001391.  But before they could do so, Highland filed its chapter 11 petition,

5

and no further amendment was possible.

**B.    HCRE Files a Single, Indefinite Proof of Claim in the Highland Bankruptcy**

In March 2020, the Bankruptcy Court set an April 8, 2020 deadline for all entities holding claims against Highland to file proofs of claim.  Dkt. 488.

With the assistance of outside counsel, HCRE timely filed its POC on April 8, 2020.  ROA.00810–14.  Exhibit A to the POC described the claim as follows:

> Claimant *may be* entitled to distributions out of SE Multifamily, but such distributions have not been made because of the actions or inactions of the Debtor. Additionally, Claimant contends that all or a portion of Debtor's equity, ownership, economic rights, equitable or beneficial interests in SE Multifamily does [not] belong to the Debtor or *may be* the property of Claimant. Accordingly, Claimant *may have* a claim against the Debtor. Claimant has requested information from the Debtor to ascertain the exact amount of its claim. This process is on-going. Additionally, this process has been delayed due to the outbreak of the Coronavirus. Claimant is continuing to work to ascertain the exact amount of its claim and will update its claim in the next ninety days.

ROA.00814 (emphasis added).   The POC—which was couched in indefinite language expressly conveying that HCRE was still exploring its potential claim— did not specify any amount, did not specify any legal theory, and did not specify any basis for the claim.

James Dondero, HCRE's sole manager, and Matt McGraner, HCRE's vice president, testified that outside counsel (Bonds Ellis Eppich Shafer Jones, LLP ("Bonds Ellis"), led by former bankruptcy judge Mike Lynn) prepared the POC, including its Exhibit A, and that HCRE relied on counsel's advice that filing the

POC was necessary to protect the company's interests.  *See* ROA.010122–23 at 54:24–55:25, ROA.010127–28 at 59:11–60:5, ROA.010130 at 62:9–15, ROA.010142–43 at 74:23–75:8, ROA.010177–78 at 109:10–110:6.[2]   Highland never sought to depose Bonds Ellis about the investigation it performed in determining that filing the POC was advisable, nor did Highland seek to elicit the testimony of D.C. Sauter, the in-house counsel responsible for communicating with Bonds Ellis, about his role in investigating the POC.  ROA.010122–123, ROA. 010128–129, ROA. 010130, ROA. 010142–143, ROA. 010177–178.

Indeed, nobody has ever suggested that the POC as originally filed was false or inaccurate in any respect.  Nor did Highland, the Bankruptcy Court, or anyone else ever suggest that Bonds Ellis acted unethically or should be sanctioned for filing the POC.

### C.   Highland Objects to the POC, and HCRE Hires Independent Counsel to Pursue the Claim

Highland objected to HCRE's POC in July 2020 as part of an omnibus objection to dozens of claims.  ROA.000782.  Highland explained that it had identified 63 proofs of claim filed by a range of individuals and entities that were "no liability claims" because the claimed liability was not reflected in Highland's

---

[2] Until HCRE filed the POC, Bonds Ellis had appeared in the bankruptcy case only on behalf of Highland's co-founder, James Dondero.  But because Dondero also served as HCRE's sole manager, it made sense for Bonds Ellis to file the proof of claim.

books and records.  ROA.000788–89 at ¶ 22.  HCRE's POC was among those 63 claims.  *See* ROA.000802.  Although many of the "no liability claims" Highland identified were either unliquidated, not specified, or later withdrawn, HCRE is the only party Highland has accused of acting in "bad faith" for filing its POC.

    In the interim, HCRE hired independent outside bankruptcy counsel, Wick Phillips, to pursue the POC.  That October, the firm filed a response to Highland's omnibus objection that further explained the basis for the POC.  ROA.000805. Specifically, the response stated:

> After reviewing what documentation is available to HCRE[] with the Debtor, HCRE[] believes the organizational documents relating to SE Multifamily Holdings, LLC … improperly allocates the ownership percentages of the members thereto due to mutual mistake, lack of consideration, and/or failure of consideration. As such, HCRE[] has a claim to reform, rescind and/or modify the agreement.

ROA.000806.   Wick Phillips also clarified that HCRE required "additional discovery to determine what happened in connection with the memorialization of the parties' agreement and improper distribution provisions, evaluate the amount of its claim against the Debtor, and protect its interests under the agreement." ROA.000807.  Dondero did not execute an amended POC containing this language. And nobody at the time suggested that Wick Phillips filed the response in bad faith or violated its duties under Federal Rule of Bankruptcy Procedure 9011 by failing to perform a proper investigation before filing the response.

**D.   Highland Belatedly Moves to Disqualify HCRE's Counsel, Triggering Months of Litigation**

Two months after Wick Phillips filed its Response, the Bankruptcy Court entered the parties' stipulated scheduling order in the contested matter.  Dkt. 1568.  The parties then exchanged written discovery and served deposition notices.  But Highland later adjourned the scheduled depositions.  Six months after Wick Phillips filed the response, Highland moved to disqualify the firm, claiming to have discovered that Wick Phillips represented Highland in one or more transactions underlying the POC.  *See* ROA.000826 at ¶ 4.

By that point, it made little sense for HCRE to dispense with its chosen counsel—especially since, as Wick Phillips reasonably believed and as Texas ethics expert Ben Selman testified, the alleged conflict was not one requiring its disqualification.  *See* ROA.004457–458 at 57:7–59:17.  Neither the Bankruptcy Court nor anyone else has ever suggested that Wick Phillips took an unethical or sanctionable position in opposing disqualification.

At both parties' urging, the Bankruptcy Court entered a scheduling order permitting limited discovery into the circumstances of Wick Phillips' prior representation of Highland and requiring the parties to file additional briefing following discovery.  Dkt. 2361; *see also* Dkt. 2757 (amending the agreed scheduling order a few months later).  At the end of that process, in December 2021,

9

the Court granted Highland's request for disqualification while denying its request for reimbursement of its costs and attorneys' fees incurred in connection with the motion. ROA.001763–64. Highland did not renew that request for fees when it later sought sanctions. ROA.001764

Even though Highland initiated this detour by moving to disqualify Wick Phillips many months after it appeared in the case, the Bankruptcy Court would later justify its Sanctions Order in part on its view that HCRE "initiated a more than six-month period of expensive discovery and side litigation" in opposing Highland's motion to disqualify. *See* ROA.000169.

### E.    HCRE Retains New Counsel, and the Parties Engage in Discovery

After the disqualification of Wick Phillips, HCRE retained Hoge & Gameros, L.L.P. to pursue the POC, and in June 2022, the Bankruptcy Court entered a new, agreed scheduling order in the matter (Dkt. 3356), which the parties later amended by agreement (Dkts. 3368, 3438). At one point, the schedule called for fact and expert discovery to wrap up in August ahead of a two-day evidentiary hearing in November 2022. *See* Dkt. 3368. But after HCRE timely disclosed its expert on August 5, 2022, Highland indicated that it would seek to strike that expert, so the parties agreed to push back the rest of the schedule to accommodate Highland's motion. *See* Dkt. 3438. The amended schedule provided for briefing on the motion to strike to be completed on September 9, 2022 (*see* Dkt. 3438 at ¶ 1), after which

10

the schedule would depend on the Bankruptcy Court's resolution of the motion. If the Bankruptcy Court granted the motion, Highland would move for summary judgment within 14 days. *Id.* ¶ 2. Otherwise, Highland would file a rebuttal expert report within 21 days of the denial, after which HCRE would make its expert available for deposition. *Id.* ¶¶ 2–3. And the parties would confer as necessary on a new date for the evidentiary hearing. *Id.*

Meanwhile, two fact depositions remained to be taken: a deposition of Dondero, and a deposition of Matt McGraner, both in his individual capacity and as a 30(b)(6) witness for HCRE. *See* Dkts. 3415, 3416, 3418.

In other words, much remained to be done in the case, by both parties, and the case was still months away from any evidentiary hearing.

### F.    HCRE Moves to Withdraw the POC, Highland Objects, and the Bankruptcy Court Denies the Motion

Three days after the Bankruptcy Court amended the schedule to accommodate Highland's contemplated motion to strike, on August 12, 2022, HCRE filed its Motion to Withdraw Proof of Claim ("Motion to Withdraw"). ROA.001765–773. HCRE did so after consultation with its outside counsel, and "in consideration of the cost and uncertainty of continuing to pursue the Claim in the face of Debtor's objection." *See* ROA.001766.

11

As HCRE explained in its Motion to Withdraw, the Fifth Circuit has held that "dismissal should be allowed unless the defendant will suffer some plain prejudice other than the mere prospect of a second lawsuit."  ROA.001768 (citing *LeCompte v. Mr. Chip, Inc.*, 528 F.2d 601, 604 (5th Cir. 1976)).  Further, there are "only a limited number of circumstances that will warrant denial" of a motion to dismiss or withdraw a claim, "since 'the [court] should not require that a plaintiff continue to prosecute an action that it no longer desires to pursue." *Robles v. Atl. Sounding Co.*, 77 F. App'x 274, 275 (5th Cir. 2003) (per curiam).  As a result, "the prospect of a second lawsuit" or the perception of some other "tactical advantage" are not bases to deny a motion to withdraw.  *LeCompte*, 528 F.2d at 604; *see also* ROA.001768.

HCRE explained that it easily met the standards for withdrawal. ROA.001768.  Again, the tasks to be completed and the costs still to be incurred included fact and potential expert depositions, motion practice (including a motion to strike and a motion for summary judgment), potential rebuttal expert discovery, preparations for an evidentiary hearing, and a contemplated two-day evidentiary hearing.  *See* Dkts. 3368, 3438.

Highland opposed withdrawal, arguing among other things that HCRE "clearly ha[d] undisclosed motives" for its motion and speculating that HCRE's "true intent" was to "avoid[] depositions now, leav[e] the specter of future litigation hanging over Highland's head, and preserv[e] the ability to re-file its claim later."

12

*See* ROA.001792–93 at ¶¶ 63, 67.[3]  Highland thus asked the Bankruptcy Court to impose "terms and conditions" on HCRE's withdrawal pursuant to Bankruptcy Rule 3006, including by issuing an "order that the withdrawal of HCRE's POC be ***with*** prejudice" or, "alternatively," by making clear that the Bankruptcy Court would "retain jurisdiction over all claims initially raised in HCRE's POC such that any refiling of such claims must be in this Court."  ROA.001779 at ¶ 4.[4]  Highland did not ask the Court to enjoin HCRE from filing any lawsuit in any forum against Highland relating to the asserted bases for the POC.

In its reply in support of the Motion to Withdraw, HCRE denied any ulterior motive and emphasized:

> HCRE has not threatened to renew litigation over the matters alleged in the Claim.  Indeed, HCRE averred in the Motion [to Withdraw] that the proof of claim process is *sui generis*, that the claims bar date passed long ago, and that the Claim is not the subject of any other pending action, proceeding, or matter.  There is no tactical advantage for the withdrawal, and there is no litigation that would be duplicated as a result of the withdrawal.

---

[3] Highland also argued that HCRE's "concerns about costs" were "not credible," since "all that remains is a few depositions and a short trial."  ROA.001793 at ¶ 65.  But as the scheduling orders made clear, that was not "all that remain[ed]."  *See* Dkts. 3368, 3438.  Indeed, in the same breath that Highland claimed there was almost nothing left to do, Highland indicated its intention to file a summary judgment motion, which alone would have caused both parties to incur substantial additional cost.  *See* ROA.001777 at ¶ 1.

[4] The alternative relief requested by Highland was unnecessary given that the Bankruptcy Court has already barred HCRE from "directly or indirectly" commencing or pursuing any claim for relief of any kind "against or affecting the Debtor or the property of the Debtor" without first seeking a determination by the Bankruptcy Court that such claim is "colorable" and obtaining the Court's authorization to file such claim.  *See In re Highland Capital Mgmt., L.P.*, NO. 19-34054-sgj11 (Bankr. N.D. Tex.), Dkt. 1943 at Ex. A, Art. IX.F.

13

ROA.002227.  In other words, going into the hearing on the Motion to Withdraw, there was no evidence that HCRE had some other, nefarious intent (or even any strategic benefit to gain from withdrawing the claim).  Rather, the Bankruptcy Court had only the representations of HCRE's counsel (made in a bankruptcy court filing pursuant to Federal Rule of Bankruptcy Procedure 9011) that the company did *not* seek to pursue the POC in a different forum and Highland's contrary speculation that HCRE must (for reasons unknown) have bad intent.

The Court held a hearing on HCRE's Motion to Withdraw on September 12, 2022.  Dkt. 3511.  At that hearing, HCRE explained that it was seeking a withdrawal that "essentially says they [Highland] win.  So the proof of claim is resolved in their favor except we're withdrawing it instead of going through all of the exercise to get a hearing."  ROA.002799 at 7:4–9; Further, as HCRE's counsel told the Court, "to the extent the Court wishes to condition it, condition it with prejudice." ROA.002799 at 7:18–20; *see also* ROA.002823 at 31:1–4 (same).

Yet in response, Highland's counsel posited his "speculat[ion]" that HCRE was not "being candid with the Court," and that HCRE must have filed the Motion to Withdraw "because [it] hoped to do this trial in a different forum at a different time elsewhere."  ROA.002813 at 21:21–24.  In the face of that accusation, two lawyers for HCRE and Dondero all represented on the record that HCRE was willing to withdraw its POC *with prejudice* and to refrain from challenging Highland's

14

interest in SE Multifamily.  At the hearing, the following exchanges occurred:

> The Court: . . . .Would you agree to a condition on the withdrawal of your proof of claim that your client agrees that Highland has a 46-point whatever it was percent interest in SE Multifamily Holdings and your client waives any right in the future to challenge that interest?

> Mr. Gameros[5]: Your Honor, if that's what the Court wants to put in an order and I have a chance to confer with my client on it, I'm pretty sure that would be agreeable.

> The Court: Today's the day.  I'm not going to continue.

> Mr. Gameros: Your Honor, we'd agree with that.

> Mr. Morris: Your Honor, I'm sorry to interrupt, but waiver of any appeal too. . . .

> And what the debtor needs in order to avoid legal prejudice is the complete elimination of any uncertainty that it owns 46.06 percent of SE Multifamily. . . .

> Mr. Gameros: Your Honor, we'll agree to it.

> The Court:   Well, you know what, this is such a big deal I really need a client representative to say that. . . .

ROA.002825–26 at 33:23–34:5.  At that point, the Bankruptcy Court took at recess

so that HCRE's counsel could get a client representative on the phone to make the

---

[5] Mr. Gameros, as counsel for HCRE and as an attorney licensed in the state of Texas and admitted to practice in the Bankruptcy Court for the Northern District of Texas, was an officer of the Court with authority to bind HCRE.  Indeed, the Supreme Court of the United States has recognized this principle for more than a century.  *See Ex Parte Garland*, 731 U.S. 333 (1866) ("Attorneys and counselors are not officers of the United States; they are officers of the court, admitted as such by its order upon evidence of their possessing sufficient legal learning and fair private character.");  *In re Snyder*, 472 U.S. 634 (1985) (stating that an officer of the court enjoys singular powers that others do not possess).

15

same representation Mr. Gameros had just made:

> Mr. Gameros: Your Honor wanted me to get a representative of NexPoint Real Estate Partners to state that they agree that the estate has its 46 percent interest in the company agreement subject to the company agreement. And I've got Mr. Sauter here who has authority to speak on behalf of NexPoint Real Estate Partners.
>
> The Court: All right. Well so what is his position with HCRE?
>
> Mr. Sauter: Your Honor, I don't have – this is D.C. Sauter. I don't have an official position with HCRE, but I have spoken with Mr. Dondero and he has authorized me to appear here today and agree to the conditions that Mr. Gameros just outlined.

ROA.002827–28 at 35:16–36:3. Still this was not sufficient for the Bankruptcy Court, which characterized Mr. Sauter's representation on the record in open court as "hearsay." ROA.002828 at 36:4–8.[6] Although counsel for HCRE disagreed with the bankruptcy court's characterization, to further assuage the Court's concern, he then elicited the following testimony from Mr. Dondero:

DIRECT EXAMINATION

> By Mr. Gameros:
>
> Q    Mr. Dondero, on behalf of HCRE, do you agree as a condition for withdrawing the proof of claim that HCRE will not challenge the estate's ownership or equity interest in SE Multifamily subject to the company agreement?
>
> A    Yes.

---

[6] As Mr. Gameros pointed out in response to the Court's comment, Mr. Sauter (who also is an attorney licensed in the state of Texas representing HCRE) was also an officer of the Court with authority to bind HCRE. ROA.002828 at 36:12–23.

Q      Do you agree that you will not appeal and that, therefore, HCRE is waiving any appeal right to that determination as a condition of withdrawing the proof of claim?

A      Yes.

ROA.002832 at 40:8–17.

By Mr. Gameros:

Q      Mr. Dondero, you desire to withdraw the proof of claim.  Correct?

A      Yes.

Q      *And you agree to an order denying the proof of claim with prejudice.  Correct?*

A      *Yes.*

Q      *And you agree that HCRE will not challenge the equity interest of its member in SE Multifamily?*

A      *Yes.*

ROA.002835–36 at 43:23–44:6 (emphases added).  In short, there can be no doubt from this record that:

- HCRE was willing to withdraw its claim *with prejudice*;

- HCRE agreed to waive any right to appeal any order relating to its POC; and

- HCRE agreed not to challenge the equity interest of Highland in SE Multifamily.

Mr. Gameros further expressly represented that HCRE would agree "not to challenge [Highland's interest] on the basis of anything asserted in the proof of claim, that being mistake, lack of consideration, or failure of consideration.  Their

17

46 percent is their ownership interest in SE Multifamily and HCRE won't challenge that."  ROA.002834 at 42:13–19.

Nonetheless, the Bankruptcy Court refused to accept these concessions.  The Court's refusal stemmed from Dondero's testimony that Highland's interest in SE Multifamily was "subject to" the company agreement—i.e., the Amended LLC Agreement governing the entity.  ROA.002835.  But of course, that statement was true: every member of SE Multifamily is bound by the company's LLC Agreement, which sets forth their rights and obligations vis-à-vis the company.[7]  Mr. Dondero's only point was that the LLC agreement could in the future be amended to reflect different ownership percentages, which often happens as a result of capital calls, new investment dollars, and the like.  ROA.002835 at 43:2–13.  To be clear, what Highland and the Bankruptcy Court were demanding was a concession that, even if SE Multifamily later made a capital call that was funded by other members but not by Highland, Highland's ownership percentage would not change.  Nothing in law or equity requires a party to agree to such a restriction.

In short, the Bankruptcy Court's repeated conclusion that HCRE refused to withdraw its POC with prejudice (and attempted to preserve its fight for another day)

---

[7] Even Highland agreed—as it must—that its "rights and obligations as a member of SE Multifamily are subject to the [LLC] agreement."  ROA.002833 at 41:10–14.  Highland argued, however, that its "ownership interest" in SE Multifamily somehow exists independently of the LLC Agreement.  *Id.*  That makes no sense and is contrary to arguments Highland made at the evidentiary hearing on HCRE's POC.  ROA.002808–809 at 16:24–17:10.

is wrong.

Two days after the hearing, the Bankruptcy Court issued an order denying HCRE's Motion to Withdraw "for reasons set forth on the record."  ROA.000171; *see also* ROA.002853A.

### G.    The Bankruptcy Court Denies HCRE's Motion to Withdraw and Forces HCRE to Defend Itself in an Evidentiary Hearing

Subsequently, Highland took the remaining fact depositions, and the parties prepared for and attended the evidentiary hearing ordered by the Bankruptcy Court. The Sanctions Order would later criticize HCRE's counsel for arguing at the close of that hearing that the Bankruptcy Court should "grant the proof of claim and reallocate the equity [in SE Multifamily] based on the capital contribution[s]." ROA.000173.  But it is unclear what else HCRE's counsel was supposed to do in a circumstance where his client was being forced to defend a position in an evidentiary hearing it did not want and sought to avoid by withdrawing its POC months earlier. In that very unusual procedural posture, counsel did the only logical and ethical thing he could do—he zealously defended his client's position.

At the evidentiary hearing on HCRE's POC, Highland's counsel for the first time asked the Bankruptcy Court to make a finding of "bad faith" in connection with HCRE's "filing" of the POC.  *See* ROA.002793–853.  The court declined to make the requested finding.   ROA.002793–853.

19

The Bankruptcy Court entered an order disallowing HCRE's POC in April 2023.[8]  ROA.010726–803.

## H.    The Bankruptcy Court Disallows HCRE's POC, and Highland Files its Bad Faith Motion

On June 16, 2023, Highland filed a Motion for (A) Bad Faith Finding and (B) Attorneys' Fees Against NexPoint Real Estate Partners LLC (f/k/a HCRE Partners, LLC) in Connection with Proof of Claim # 146 ("Bad Faith Motion").  ROA.10804–11253.  Highland's motion contained only two pages of legal argument and made only two arguments.  First, Highland contended that HCRE filed the POC in bad faith, positing that Dondero conducted no diligence and had no basis to believe that the POC was truthful.  *See* ROA.010812 at ¶ 21.  Highland did not, however, challenge the accuracy of anything contained in the POC Dondero signed.  Second, Highland argued that it was entitled to a sanction in the form of recoupment of its attorneys' fees and expenses, citing as evidence various invoices and summaries of fees and expenses incurred.  ROA.010813, ¶ 24–26.

Highland's motion contained a single paragraph regarding Wick Phillips, which merely recounted that Wick Phillips represented HCRE until it was

---

[8] In its Sanctions Order, the Bankruptcy Court observes that HCRE did not appeal the disallowance of its POC.  ROA.000158.  But because HCRE repeatedly told the Bankruptcy Court that the company did not want to pursue the POC (and, at the Court's urging, repeatedly agreed to withdraw the POC and to waive any right to appeal the claim's withdrawal), it only makes sense that HCRE chose not to appeal the denial of the claim.

disqualified in December 2021.  ROA.010807 at ¶ 8.  Highland did not argue that the Wick Phillips fight constituted bad faith on HCRE's part.

HCRE's opposition brief responded directly to Highland's two legal arguments, explaining why HCRE had a good faith basis to file the POC and contending that the fees Highland sought were excessive.  ROA.011267–274 at ¶¶ 50–63.

Highland then made multiple new arguments in its reply brief (which was four pages longer than its motion).  ROA.011277.  For example, Highland argued for the first time in reply that HCRE and its principals acted in bad faith by opposing Highland's motion to disqualify Wick Phillips and asked the Court to "find that [HCRE's] opposition to Highland's Disqualification Motion was made in bad faith." ROA.011278–81 at ¶¶ 2, 12–14.  Because this argument did not feature at all in Highland's motion, HCRE had not addressed it in its opposition.

In addition, Highland argued for the first time that HCRE did not just *file* its POC in bad faith, but also *tried to preserve the substance of its claim* in bad faith. ROA.0011282–83 at ¶¶ 18–20.  Because this argument too was absent from Highland's motion, HCRE had no notice that Highland's request for sanctions was also premised on HCRE's actions taken through the closing argument at the evidentiary hearing on HCRE's POC.

In light of Highland's new arguments, HCRE told Highland it intended to move to strike or for a sur-reply.  Ultimately, Highland agreed to file an amended brief striking the Wick Phillips argument but refused to strike its other new arguments.  *See* ROA.011296 at ¶¶ 11–14.  HCRE therefore sought leave to file a sur-reply at the hearing on Highland's motion, but the Bankruptcy Court denied that request.  ROA.011293–307.

## I.  The Bankruptcy Court Grants Highland's Request for a Bad Faith Finding and Sanctions and Denies Reconsideration

***The Bad Faith Finding.***  On March 5, 2024, the Bankruptcy Court issued its Sanctions Order, concluding that HCRE "acted in bad faith and willfully abused the judicial process in filing, prosecuting, and then pursuing an eleventh-hour withdrawal of its Proof of Claim."  ROA.000189.  In reaching this conclusion, the Bankruptcy Court adopted *all* of Highland's new arguments—even its stricken argument about Wick Phillips.  *See* ROA.000204–205, 208, 216.  The Court ordered HCRE to reimburse Highland's attorneys' fees and costs in the amount of $825,940.55.  *Id.*  Notably, about $375,000 of those fees were incurred *after HCRE agreed to withdraw the POC with prejudice.*  *See* ROA.011107–11253; ROA.011266 at ¶ 43.

The Bankruptcy Court first found that HCRE filed its POC in bad faith and willfully abused the judicial process because Dondero, HCRE's President and sole

manager, allegedly executed and authorized the filing of the proof of claim without personally investigating it. *See* ROA.000196–99. Indeed, the Bankruptcy Court spent nearly four pages of its Sanctions Order castigating Dondero for all the things he personally did not do before authorizing his lawyers (who the Bankruptcy Court acknowledges prepared and filed the POC) to affix his electronic signature to the POC. *Id.* Conspicuously absent, though, was any conclusion (or even suggestion) that the POC Dondero signed was false or inaccurate. Nor could the Court make such a finding. The Court flatly acknowledges that the POC "was not in a liquidated amount and was somewhat ambiguous." ROA.000187. That is an understatement. As set forth above, the POC that Dondero signed said only that HCRE "*may* have a claim against the Debtor" but that HCRE needed additional information to make that determination. ROA.00814 and *supra*. There is nothing facially false or inaccurate about the POC.

Next, adopting Highland's arguments raised for the first time in reply, the Bankruptcy Court concluded that HCRE's "***litigation strategy and actions*** in prosecution of its Proof of Claim (including vigorous opposition to the Disqualification Motion, the timing of the Motion to Withdraw, and its repeat and overt attempts to preserve the very claims upon which is Proof of Claim was based in connection with the Motion to Withdraw) demonstrates bad faith and a willful abuse of the judicial process on the part of NexPoint/HCRE." ROA.000205

23

(emphasis in original).  But in reaching this conclusion, the Bankruptcy Court made several observations and findings that make no sense.  First, the Court chastised HCRE for "initiating a more than six-month period of expensive discovery and side litigation" over the disqualification of its chosen counsel, Wick Phillips. ROA.000201.  But the Court simultaneously acknowledged that *Highland*, not HCRE, initiated that "side litigation" by moving to disqualify Wick Phillips nearly six months after the firm made its initial appearance in the case and was firmly entrenched in the dispute.   ROA.000200.   The Bankruptcy Court further acknowledged that it *denied* Highland's prior request for a fee-shifting sanction against HCRE for fighting the disqualification motion and that Highland was not renewing that request.  ROA.000201–202.

The Bankruptcy Court next engaged in rank speculation to justify its conclusion that HCRE engaged in "gamesmanship" by seeking to withdraw the POC.  To this end, the Court rhetorically asked, "Query why might NexPoint/HCRE have done this [filed a Motion to Withdraw at the time it did]?"  ROA.000202.  The Court then injected its own theory in response to that question and concluded, based on its own "concern[]" rather than any actual evidence of record, that the timing of the Motion to Withdraw "reflected gamesmanship."  ROA.000201–202.

Finally, the Bankruptcy Court's conclusion that HCRE attempted to preserve its claim for another day rested on two equally specious observations: (1) that HCRE

24

refused to agree "unequivocally" that it would "waiv[e] the right to relitigate or challenge the issue of Highland's 46.06% interest in SE Multifamily" for any reason at any time; and (2) that counsel for HCRE and Highland were unable to agree on a proposed order allowing withdrawal of the proof of claim. ROA.000204. The Bankruptcy Court's Sanctions Order particularly fixated on the first of these conclusions, repeatedly insisting (despite the testimony at the withdrawal hearing) that HCRE refused to withdraw its POC "with prejudice." *Id.* at ROA.000188, 203, 212. And the Court cited no evidence that the failure of the parties to agree on a proposed order was because HCRE insisted on preserving its claim.

  ***The Reconsideration Order.***  On April 18, 2024, HCRE timely moved for a Motion for Relief from Order ("Reconsideration Motion") seeking reconsideration on limited grounds. ROA.0114568-011511. In particular, HCRE argued that the Bankruptcy Court erroneously concluded that HCRE had refused to withdraw its POC "with prejudice," pointing to the extensive contrary testimony of record. ROA.011461. HCRE also argued that the Bankruptcy Court's analysis of the "but for" reasons for Highland's incurrence of attorneys' fees and costs was legally incorrect, such that the Court's fee-shifting sanction was erroneous. Finally, HCRE objected to the Court's decision to rely on the arguments Highland raised for the first time in its reply brief, which unfairly prejudiced HCRE. HCRE therefore asked the Bankruptcy Court to reconsider and/or reduce the sanctions award. *Id.*

After a hearing, the Bankruptcy Court denied reconsideration in a May 21, 2024 order.  ROA.011545-552.  The Court doubled down on its conclusion that HCRE would not withdraw its POC with prejudice.  ROA.011550.  The Court also suggested that its findings about what "[HCRE] was and was not willing to do" at the withdrawal hearing were somehow immunized by HCRE's decision not to appeal the denial of the withdrawal.  ROA.011551.  Finally, the Court justified the award of fees that Highland incurred after it successfully prevented withdrawal on the ground that the Court "never would have ordered trial on the merits if not for" HCRE's filing of the POC and purported refusal to withdraw it with prejudice. ROA.011552.

HCRE timely appealed the Sanctions Order on March 20, 2024, and timely amended its notice of appeal to include the Reconsideration Order on June 4, 2024. ROA.000001; ROA.000075; *see also* Fed. R. Bankr. P. 8002(a)(1).

## II.    STANDARD OF REVIEW

This Court reviews de novo a bankruptcy court's "invocation of its inherent power."  *In re Moore*, 739 F.3d 724, 729 (5th Cir. 2014) (attribution omitted).  "A decision to invoke the inherent power to sanction requires a finding of "'bad faith or willful abuse of judicial process,'" which "must be supported by clear and convincing proof."   *Id*. at 729–30.  Whether "clear and convincing evidence supports the court's finding" is reviewed de novo.

26

If the Court determines that "this high threshold for invoking inherent powers is surmounted,", it then reviews "the substance of the sanction itself" for abuse of discretion. *Id*. at 730; *see also In re Skyport Glob. Commc'n, Inc.*, 642 F. App'x 301, 303 (5th Cir. 2016); *In re Evergreen Sec., Ltd.*, 570 F.3d 1257, 1263 (11th Cir. 2009) (reviewing for abuse of discretion a sanction issued under 11 U.S.C. §105). "A court abuses its discretion when its ruling is based on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir. 1995).

## III.  SUMMARY OF THE ARGUMENT

The Sanctions Order repeats two fundamental mistakes that have led the Fifth Circuit to reverse this same Bankruptcy Court's sanctions decisions before.

First, and most fundamentally, the Bankruptcy Court failed to identify the clear and convincing evidence of bad faith or willful abuse of the judicial power necessary to invoke its inherent power to sanction. It relied instead on just the sort of speculation and suspicion the Fifth Circuit has held falls well short of that standard. And far from providing clear and convincing evidence supporting the Bankruptcy Court's findings, the record contradicts them.

The Bankruptcy Court's finding that HCRE filed its POC in bad faith rests on the conclusion that Dondero relied on his lawyers and staff rather than his own personal investigation in deciding to approve the POC's filing. Neither the record

27

nor the law supports the leap from that unremarkable fact to the conclusion that HCRE must have filed in bad faith.  The Bankruptcy Court has never so much as suggested that the POC was false or inaccurate, and for good reason:  HCRE could hardly have hedged more, representing only that it might have a claim, was still investigating whether it did, and needed discovery from Highland to determine the amount of any claim.  The Bankruptcy Court did not and could not explain how it could be bad faith to sign off on the truth.  In any event, its view that the person signing the claim form must be the same person who investigated its contents is contrary to law; there is no such requirement.

The Bankruptcy Court's finding that HCRE pursued the POC in bad faith fares no better.  HCRE's reasonable, albeit unsuccessful, opposition to Highland's belated disqualification motion is not evidence of bad faith.  Nor does the timing of HCRE's attempt to withdraw its claim suggest misconduct.  The Court's mere suspicions of gamesmanship (in the form of an imagined scheme to extract some unspecified advantage in hypothetical future litigation from the deposition schedule) find no support in the record, which instead confirms that HCRE made the good-faith decision that litigating the POC was no longer worth the mounting costs.  The clear and convincing evidence standard requires facts, not conspiracy theories.  Finally, the Bankruptcy Court's finding that HCRE refused to dismiss its POC with prejudice is flatly contrary to the record.  HCRE's repeatedly agreed on the record to dismiss

28

its POC with prejudice, to waive any right to appeal, and to forgo any challenge to Highland's equity interest in SE Multifamily.  That HCRE would not also acquiesce in a bizarre, legally unsupportable demand to stipulate that no matter what happened in the future, Highland's interest could never change was entirely reasonable, not evidence of bad faith.

Because there is no clear and convincing evidence of bad faith or willful abuse of the judicial process, the Bankruptcy Court lacked authority to impose sanctions. Its decision should therefore be reversed.

Second, even if the Bankruptcy Court had authority, the sanction it chose exceeded that authority.  Repeating an error the Fifth Circuit recently corrected in this same bankruptcy, the Court shifted fees that lack any causal link to the alleged misconduct.  At the very least, once Highland successfully prevented HCRE from withdrawing its claim—and thus forced the litigation to continue—the additional $375,000 in attorneys' fees and costs it incurred in pressing forward to a merits decision resulted from its own choices (and the Bankruptcy Court's enablement), not HCRE's.  The Bankruptcy Court's contrary conclusion merely repeats its unsupportable view that HCRE refused to withdraw its claim with prejudice.  This disconnect between the alleged misconduct and the sanction makes the sanction impermissibly punitive and requires vacatur.

Finally, the Bankruptcy Court abused its discretion in denying reconsideration

29

by doubling down on the same factual and legal errors. Its view that HCRE refused to withdraw its claim with prejudice is still exactly the opposite of what happened, and none of the Bankruptcy Court's new excuses change that. And the Reconsideration Order confirms that that mistaken factual finding is the Bankruptcy Court's only justification for shifting Highland's fees from the period after the Court denied HCRE's motion to withdraw. The Reconsideration Order should therefore be reversed.

## IV.   ARGUMENT AND AUTHORITIES

### A.   The Bankruptcy Court Erred in Issuing the Sanctions Order

The Sanctions Order should be reversed for multiple independent reasons. First, the Bankruptcy Court's finding of bad faith and willful abuse of judicial process was wrong. There is no "clear and convincing" evidence for those findings; they are either directly contrary to the evidence of record or based on the Bankruptcy Court's unadorned speculation. Second, the Bankruptcy Court abused its discretion in concluding that "but for" HCRE's actions, Highland would not have incurred the attorneys' fees and costs awarded for the period after the Court denied HCRE's motion to withdraw. As a result, the Bankruptcy Court awarded sanctions designed solely to punish, which is an impermissible exercise of the Court's inherent authority under Bankruptcy Code § 105.

30

### 1. There Is No Clear and Convincing Evidence to Support the Bankruptcy Court's Bad Faith Findings and Invocation of its Inherent Powers

As noted, a bankruptcy court cannot invoke its inherent power to sanction without "clear and convincing proof" of "bad faith or willful abuse of the judicial process." *Moore*, 739 F.3d at 729-30 (attribution omitted). This Court therefore must reverse unless it concludes, based on its own de novo review of the record, that the finding is supported by clear and convincing evidence. The record here supports no such thing.

The Bankruptcy Court's contrary conclusion reprises the same errors the Fifth Circuit reversed in *Moore*. See 739 F.3d at 729–33. There, as here, the same Bankruptcy Court based its finding of bad faith on "mere suspicions" and "allegations" that lacked support in the record. *Id*. at 731. The Fifth Circuit held that the Bankruptcy Court's "theories f[e]ll short of the stringent standard of clear and convincing evidence of bad faith." *Id.*

*Moore* applies with equal force here. The Bankruptcy Court's Sanctions Order turns on two core findings: (1) that HCRE *filed* the POC in bad faith; and (2) that HCRE *refused to withdraw the POC with prejudice*, such that its continued pursuit of the POC was in bad faith. ROA.000195,000203. Neither finding can be reconciled with the evidentiary record.

31

### a.     HCRE did not file the POC in bad faith.

The Bankruptcy Court's finding that the POC was filed in bad faith makes no sense in the context of the record and the law.  The Sanctions Order talks at length about all the things that Dondero did not do prior to allowing his electronic signature to be affixed to the POC.  *See* ROA.000196–99 (he did not read the claim form; he did not investigate "whether the statements made in the Proof of Claim were truthful and accurate"; he did not provide feedback to anyone about the claim).  But the Court never finds or even suggests that the POC was false or inaccurate.  To the contrary, the Court acknowledged that the claim was "prepared and filed by a law firm [Bonds Ellis]" and was phrased in "ambiguous" language, explicitly divulging that HCRE was still investigating *whether* it had a claim and that HCRE would need discovery from Highland to ascertain the *amount* of any such claim.    ROA.000187; ROA.000196.  Under those circumstances, it is unclear what investigation Dondero could have performed himself that would have made a difference to the language of the claim.  And given that the claim form expressly hedged about whether HCRE had any claim, the Court could hardly conclude that the language Dondero authorized was false or inaccurate.

In any event, the law does not require that the person signing the claim form be the same individual who investigated the contents of the claim.  *See In re Cushman*, 589 B.R. 469, 479 (Bankr. D. Me. 2018) (finding no basis for sanctions

32

where the creditor relied on data provided by others in its proof of claim). Like the creditor in *Cushman*, Dondero testified that he relied on others, including his lawyers, and on the processes put in place by his staff in deciding to approve the POC's filing. ROA.000198. Dondero was allowed to do that. And despite the Bankruptcy Court's criticism of "Dondero's 'I'm-a-very-busy-person/too-busy-to-be-bothered-to-investigate' excuse" (a criticism that, as set forth above, makes no sense when the investigation required discovery from Highland), it is a fact of business that company officers often have to rely on others (including their lawyers) in filing proofs of claim. That is perhaps why the Bankruptcy Court did not cite— and HCRE has not found—any case saying that a company filing a proof of claim may be sanctioned because the corporate officer executing the claim did not himself diligence the claim or craft the claim language. The Court's finding that Dondero did not jump through the same hoops as his lawyers and staff does not justify the Bankruptcy Court's finding that HCRE acted "in bad faith and willfully abused the judicial process," much less come close to clear and convincing proof.

### b.    HCRE did not pursue the POC in bad faith.

The Bankruptcy Court also erred in concluding that HCRE's "***litigation strategy and actions*** taken in the course of prosecuting its Proof of Claim over the next two and a half years, after filing it, ***provide further support for a finding that [HCRE] engaged in bad faith and willfully abused the judicial process***."

ROA.000199 (emphasis in original).  As set forth above, the Bankruptcy Court pointed to three actions by in an attempt to support this conclusion:  (1) HCRE's "vigorous opposition" to Highland's motion to disqualify Wick Phillips; (2) "the timing of the Motion to Withdraw," and (3) HCRE's supposed "overt attempts to preserve the very claims upon which its Proof of Claim was based in connection with the Motion to Withdraw."  ROA.000205.  But as the evidence demonstrates, none of these actions occurred as characterized by the Court, and none justified a finding that HCRE acted in bad faith, or "willfully abused" the judicial process.

First, shy of taking a legal position that is clearly contrary to law or sanctionable under Federal Rule of Bankruptcy Procedure 9011, it is unclear how a party's "vigorous opposition" could ever constitute an abuse of judicial process.  Nor is there a shred of evidence in this record to support the conclusion that HCRE or its counsel, Wick Phillips, took inappropriate positions in contesting Highland's disqualification motion.  To the contrary, the evidence demonstrates that Highland sought to disqualify Wick Phillips six months after the firm first appeared on behalf of HCRE.  ROA.000200.  Further, Wick Phillips presented the testimony of a professional ethics expert demonstrating that the purported conflict did not require the law firm's disqualification.  ROA.004457–458.  Although the Bankruptcy Court ultimately decided the motion in Highland's favor, the Court's order did not suggest that Wick Phillips took an unreasonable position or otherwise abused the judicial

34

process in opposing the disqualification motion. ROA.001761–64. And the Bankruptcy Court ultimately denied Highland's request for attorneys' fees incurred in connection with the disqualification fight—a request that Highland did not renew in seeking sanctions. ROA.000201. Merely unsuccessfully opposing a motion is not evidence of bad faith. And nothing about the disqualification fight suggested that HCRE did anything else wrong.

Second, the Bankruptcy Court's rank speculation about "the timing of the Motion to Withdraw" also cannot support a bad faith finding. The Fifth Circuit has previously overturned similar sanctions awards issued by this Bankruptcy Court where the Bankruptcy Court relied on its suspicions and what it perceived as the "unpleasant odor" of an adversary proceeding as the basis for finding bad faith. *Moore*, 739 F.3d at733 (2014). The Bankruptcy Court repeated its error here. Its criticism of the "timing" of HCRE's Motion to Withdraw—months before any evidentiary hearing was scheduled, and just as Highland was about to initiate another round of briefing—boils down to the Court's conjecture that "gamesmanship," was afoot simply because the work still to be done included fact depositions of HCRE's witnesses. ROA.000213. "Again, the [B]ankruptcy [C]ourt's mere suspicions do not add up to clear and convincing evidence of [HCRE's] bad faith." *Moore*, 739 F.3d at 731. What is more, the actual evidence flatly contradicts the Bankruptcy Court's speculation. What the record shows is this:

35

- On August 9, 2022, shortly after Highland indicated that it planned to move to strike HCRE's expert, the Bankruptcy Court entered an amended scheduling order to accommodate Highland's motion. It provided that (1) the parties would brief Highland's motion to strike by September 9, 2022; (2) Highland would file a summary judgment motion within 14 days of any order on the motion to strike; (3) Highland would file a rebuttal expert report within 21 days of any order denying the motion to strike and also make its expert available for deposition; and (4) the parties would confer as necessary on a new date for the evidentiary hearing. Dkt. 3438, ¶¶ 1–3.

- At the time the Court entered the new scheduling order, fact discovery was not complete. *See* Dkts. 3415, 3416, 3418.[9]

- Three days later, HCRE moved to withdraw, explaining that due to SE Multifamily's uninterrupted operations, and in consideration of the cost and uncertainty of pursuing the POC in the face of Highland's objection, HCRE decided to withdraw the POC. ROA.001777.

- At the hearing on the motion to withdraw, HCRE's in-house representative, its outside counsel, and ultimately Dondero himself each represented that HCRE would withdraw its POC "with prejudice," would waive any right to appeal of the Court's order on the POC, and would not challenge Highland's interest in SE Multifamily. ROA.002825–26 at 33:23–34:5; ROA.002827–28 at 35:16–36:3; ROA.002832 at 40:8–17; ROA.002835–36 at 43:23–44:6.

- Neither the Bankruptcy Court nor Highland would accept these representations, leading the Court to deny HCRE's motion and force it to continue litigating the POC.

At bottom, the *only* evidence of HCRE's reason for seeking to withdraw the POC

---

[9] At the hearing on withdrawal, Highland made much of the fact that HCRE filed the motion after it had taken the depositions of Highland's witnesses but before the depositions of HCRE's witnesses. Highland speculated that HCRE sought to exploit the deposition testimony of Seery at a later date. ROA.002083–84. Again, there is no record evidence suggesting the prospect of any such exploitation, let alone clear and convincing evidence that the Motion to Withdraw was the conclusion of some yearslong plot to get deposition testimony from Highland without having to make HCRE's witnesses available, as the Bankruptcy Court imagined. ROA.000213.

36

when it did is that HCRE made a decision, in consultation with counsel, that pursuing the claim was not worth the time, money, and effort in light of how the bankruptcy (and in particular, Highland's management of SE Multifamily) had unfolded. ROA.002226–28.  The evidence further demonstrated that—far from attempting to drop its claim at the eleventh hour—HCRE sought to withdraw the claim to avoid the cost of additional discovery, motion practice, hearing preparations, and an evidentiary hearing on the merits.  *Id.*  That Highland's contemplated motion to strike was about to add to those costs and prompted a reckoning explains the "timing of it all" far better than the Bankruptcy Court's convoluted theory about HCRE somehow planning to exploit the deposition schedule for strategic advantage in some hypothetical future litigation.  ROA.001777.

Although the Court's order denying HCRE's Motion to Withdraw is not on appeal, the Court's conclusions about HCRE's actions in connection with the Motion to Withdraw are very much at issue.  To that end, it is worth pointing out the extraordinary legal irregularity of what occurred at the Motion to Withdraw hearing.

At the hearing, the Bankruptcy Court and Highland demanded (among other things) that HCRE stipulate to something that was improper and made no sense:  that Highland would *always* have a 46.06% interest in SE Multifamily, regardless of what happens in the future, and regardless of what the SE Multifamily LLC Agreement might say.  ROA.002802 at 10:8–13.  Further, the Court and Highland

insisted that HCRE waive any right to appeal any order of the Court relating to the POC. ROA.002826 at 34:13–20. Thus, the Bankruptcy Court provided HCRE "no real alternative but to withdraw its proofs of claim with prejudice and without conditions," which itself was an abuse of discretion. *See In re Lowenschuss*, 67 F.3d 1394, 1399 (9th Cir. 1995), cert. denied 517 U.S. 1243 (1996) (bankruptcy court erred in denying creditor's request for conditional withdrawal of claims where court demanded creditor dismiss with prejudice and without conditions or proceed to trial). In other words, the Bankruptcy Court ultimately denied HCRE's Motion to Withdraw because of HCRE's hesitancy to agree to conditions that were legally impermissible. Under the circumstances, the Court's conclusion that HCRE's actions in connection with the Motion to Withdraw were a "willful abuse" of judicial process is specious at best.

Finally, the Bankruptcy Court's conclusion that HCRE acted in bad faith because it made "overt attempts" to preserve "the claims on which its proof of claim was based" cannot withstand scrutiny. ROA.000205. In its Sanctions Order, the Court repeatedly cited HCRE's supposed refusal to withdraw its POC "with prejudice" as the basis for the Court's finding that HCRE somehow tried to preserve its claim for another day. *See* ROA.000188 (HCRE "was unwilling to withdraw the Proof of Claim **with prejudice** to asserting its claims again in any future litigation in any forum" (emphasis in original)); ROA.000203–204 (citing HCRE's "repeated

38

attempts to preserve its claims against Highland for use against Highland in the future," as evidenced by HCRE's supposed "refus[al] to agree, at the September 12 hearing, to language in an order allowing withdrawal of the Proof of Claim that stated, unequivocally, that [HCRE] waived the right to relitigate or challenge the issue of Highland's 46.06% ownership interest in SE Multifamily").  But as the actual testimony at the September 12 hearing demonstrates, HCRE repeatedly attempted to withdraw its POC *with prejudice*, agreed *not to challenge* the equity interest of Highland in SE Multifamily, and even agreed to *waive* any right to appeal of any order denying its POC.  *See supra* at 14–18.  That the Bankruptcy Court and Highland refused to accept these concessions is not grounds to find by clear and convincing evidence that HCRE abused the judicial process.  Even setting aside whether it was appropriate to demand these concessions in the first place, HCRE's acquiescence was more than sufficient to demonstrate that the company did not intend to pursue its POC in some other fashion in some other forum.  And that acquiescence is precisely the opposite of an "overt attempt" to preserve the claim.  *Contra* ROA.000205.

The one thing HCRE refused to do at the hearing—and the apparent basis for the Bankruptcy Court's claim that HCRE refused to withdraw its claim with prejudice—was accede to the additional demand that HCRE stipulate to something that was improper and made no sense:  that Highland would *always* have a 46.06%

interest in SE Multifamily, regardless of what happens in the future, and regardless of what the SE Multifamily LLC Agreement might say. ROA.002835. There was no legal basis for imposing that extra condition on HCRE's with-prejudice withdrawal of its POC. *See In re Lowenschuss*, 67 F.3d 1394, 1399–41 (9th Cir. 1995) (bankruptcy court erred in denying creditor's request for conditional withdrawal of claims where there was "no evidence" that the debtor "would be prejudiced legally" by a withdrawal on the terms the creditor proposed).

To be clear, the Bankruptcy Court's order denying withdrawal is not on appeal. But its conclusions that HCRE's actions at the hearing, and in particular its refusal to agree to this additional condition, amount to evidence of bad faith or willful abuse of the judicial process are the heart of the issue. And the extraordinary legal irregularity of that demand undercuts the Bankruptcy Court's attempt to characterize HCRE's hesitancy to agree with it as some nefarious attempt by HCRE to preserve its claim while pretending to drop it.

*        *        *

In short, there is no evidence, much less clear and convincing evidence, to support the Bankruptcy Court's finding of bad faith and willful abuse of judicial process. As a result, the Bankruptcy Court lacked authority to impose sanctions, and so this Court should reverse. *See Moore*, 739 F.3d at 729–30.

###### 2.      The Bankruptcy Court's Punitive Sanction Exceeded its Authority Under Bankruptcy Code § 105

Because the Bankruptcy Court "had no legal authority in the first place to invoke its inherent sanction power," there is no need "to review the substance of the sanction." *Moore*, 739 F.3d at 733 n.16.  But even if the Bankruptcy Court had authority, the sanction it imposed exceeded the scope of its authority under Bankruptcy Code § 105.

Section 105 provides that a court may take "any action or make[] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105.  However, that power is limited. As the Fifth Circuit recently explained, the civil contempt power of Article I courts "is limited" because it "'uniquely is liable to abuse.'"  *The Charitable DAF Fund, L.P. v. Highland Capital Mgmt., L.P.*, 98 F.4th 170, 174 (5th Cir. 2024) (quoting *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994)); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–50 (1991) (inherent powers must be exercised with restraint and discretion because of their potency).  Thus, a sanction "may not have the 'primary purpose' of 'punishing the contemnor or vindicating the authority of the court.'"  *The Charitable DAF Fund*, 98 F.4th at 174 (cleaned up). As a result, where, as here, a bankruptcy court issues a fee-shifting sanction, there must be a "causal link between the litigant's misbehavior and the legal fees paid by

41

the opposing party." *Id.* at 175 (cleaned up). "Absent that because-of-link, the sanction is punitive rather than compensatory and hence falls outside the bankruptcy court's statutorily limited powers." *Id.* (internal citation and quotation omitted).

Against this legal backdrop, the Bankruptcy Court abused its discretion by issuing a punitive sanction that lacked the requisite "causal link" between the misbehavior alleged and the sanction awarded. This is not the first time in the Highland bankruptcy that the Bankruptcy Court has exercised its sanction power without the requisite restraint. In *The Charitable DAF Fund*, the Bankruptcy Court issued a nearly $240,000 sanction against several parties and their counsel for filing a motion seeking to add Highland's CEO, James P. Seery, Jr., as a defendant in a federal district court lawsuit. 98 F.4th at 172. Following denial of the motion at issue, Highland sought, and the Bankruptcy Court allowed, "extensive discovery" and "a marathon evidentiary hearing" aimed at uncovering evidence to support Highland's later-filed contempt motion. *Id.* at 176. At the close of that process, the Court's $240,000 contempt award shifted the entire bulk of Highland's attorneys' fees to the moving parties. This Court affirmed the award, and the alleged contemnors appealed.

The Fifth Circuit vacated the award. In doing so, the Court emphasized that "the *only* contumacious conduct" was the appellants' act of filing a motion in the wrong court to add Seery as a defendant. *Id.* at 175. By contrast, the Fifth Circuit

42

concluded that all of the other activity in the case, including the post-motion discovery and the Bankruptcy Court's "mini-trial," were not caused by the movants. *Id.* at 176.  As a result, Highland was not entitled to recover fees associated with that later punitive proceeding.  *Id.*

The same problems pervade the Bankruptcy Court's Sanctions Order here.  As set forth above, prior to filing the POC, HCRE's involvement in the Highland bankruptcy was minimal.  HCRE, like dozens of other creditors, filed a protective, unliquidated POC early in the proceedings that can hardly be described as "contumacious," but even if the Bankruptcy Court could appropriately describe the mere filing of the POC at issue in that manner, everything that happened afterward does not come close to deserving the same label.  *Highland*, not HCRE, decided to initiate a disqualification dispute that lasted nearly six months.

The Bankruptcy Court expressly premised its shifting of attorneys' fees and costs for the period after it denied withdrawal on the erroneous conclusion that HCRE "would not agree to [the POC's] withdrawal, with prejudice, to NexPoint/HCRE's right to challenge Highland's title to its 46.06% membership in SE Multifamily in the future." ROA.000212.  Specifically, the Court concluded that the fees and costs Highland incurred to continue fighting the POC after it successfully blocked HCRE's attempted withdrawal would not have been incurred

43

"but for" HCRE's bad faith attempted withdrawal. *Id.*; ROA.011551–52.[10]  But again, the Court's finding that HCRE refused to withdraw its POC with prejudice is mistaken.  HCRE tried and desired to withdraw its claim with prejudice, as both its counsel and its sole manager testified.  It was *Highland*, not HCRE, that wanted to keep litigating regardless.

To bolster its "but for" conclusion on attorneys' fees post-dating HCRE's Motion to Withdraw, the Bankruptcy Court surmised that Highland is somehow in a different position today than it would have been had it simply "accepted a 'win'" and agreed to withdrawal of HCRE's POC in September 2022.  But the Court did not explain what is different, except to default to its erroneous refrain that HCRE refused to withdraw its POC with prejudice.  ROA.000212.

The record belies the Bankruptcy Court's conclusion.  The Court's order denying the POC on the merits does not go as far as the Court insisted that HCRE needed to go to avoid a full evidentiary hearing.  Specifically, the order does not provide that Highland will retain a 46.06% interest in SE Multifamily in perpetuity, nor could it have; the Court lacked the power to order that relief. The Court itself acknowledged that, "under section 2.1 of the Amended LLC Agreement, Members may make future capital contributions to SE Multifamily."  ROA.010761.  And that

---

[10] Notably, approximately $375,000 of the total $809,000 in fees incurred by Highland were incurred *after* the Court denied HCRE's motion to withdraw the POC.  ROA.011107–011253 and ROA.011266.

is precisely why Dondero testified in September 2022 that he could not agree that Highland would hold a fixed 46.06% interest in SE Multifamily forever; it stands to reason that future capital contributions by Highland or others could change that percentage.  The Court's merits order also does not purport to prevent HCRE from contesting Highland's interest in SE Multifamily in any forum in the future.  Instead, the Order merely states that Highland's objection to the POC is sustained and that the claim is disallowed "for all purposes."  ROA.010764.  In other words, the parties are indeed in the *exact same position* as they would have been had Highland just "taken the win" when HCRE sought to withdraw its POC.

Under these circumstances, the Bankruptcy Court's conclusion that HCRE's purported refusal to withdraw the POC with prejudice, as opposed to Highland's successful objection to withdrawal, is what caused Highland to incur an additional $375,000 in attorneys' fees is wrong.  Because there is no "but for" connection, the sanctions award exceeded the Bankruptcy Court's authority and should be vacated.

### B.     The Bankruptcy Court Doubled Down on Its Errors in Denying Reconsideration

The Bankruptcy Court also abused its discretion in denying HCRE's Reconsideration Motion.  As noted, HCRE argued that the Bankruptcy Court made a mistake of fact in concluding that HCRE refused to withdraw its POC "with prejudice," and that the Court's legal conclusion regarding "but for" causation was

wrong in light of this mistake of fact. *See* ROA.011461, 011474–76.[11]  The Bankruptcy Court erred in rejecting these arguments.

First, the Bankruptcy Court acknowledged that "HCRE expressed that it would withdraw its claim with prejudice," including "with prejudice to filing any appeal of a bankruptcy court order on same." ROA.011547.  But according to the Court, HCRE's agreement to withdraw its claim "with prejudice" was limited to "re-asserting it [the POC] in the bankruptcy court." *Id.*  According to the Court, what HCRE refused to do at the hearing on the Motion to Withdraw was agree to a withdrawal order that contained "clear and unequivocal language" that HCRE "would not be able to assert its claims and/or theories regarding rescission and/or reformation of the SE [Multifamily] LLC Agreement in any future litigation in any court or forum." ROA.011547–48.

That conclusion was an abuse of the Bankruptcy Court's discretion several times over.  For starters, neither the Court nor Highland ever asked HCRE to make this highly specific concession, but even so, HCRE and its counsel repeatedly agreed to forego *any* challenge to Highland's interest in SE Multifamily and *never confined*

---

[11] HCRE also argued that the Bankruptcy Court impermissibly relied on arguments raised for the first time in Highland's reply brief (including Highland's belated argument that HCRE *pursued* its POC in bad faith), which is improper as a matter of law and merited correction of the Court's Sanctions Order.  *See* ROA.011479.

that agreement to actions before the Bankruptcy Court. *See supra* at 11-14.[12]  Thus, the Bankruptcy Court's conclusion that HCRE refused to give a broad enough concession is simply wrong.

Moreover, Rule 3006 allowed the Bankruptcy Court to impose any "terms and conditions" that the court "deemed" proper in an order allowing HCRE to withdraw its POC.  Federal Rule of Bankruptcy Procedure 3006.  Had the Bankruptcy Court truly believed that "clear and unequivocal" language precluding future litigation was proper under the circumstances, the Court could have crafted an order that included it.  That the Court chose not to do so is not the fault of HCRE.  And the Bankruptcy Court's suggestion—made for the first time in the Reconsideration Order—that it denied the motion to withdraw not just because of the purported refusal to withdraw the POC "with prejudice," but also based on the Court's consideration of the "so-called *Manchester* factors," cannot be squared with the record.  ROA.011551.  Nothing in the Court's orders invokes the *Manchester* factors or explains how the Bankruptcy Court weighed them in reaching its decision on withdrawal.  Indeed, the Court's assertion that its analysis of the *Manchester* factors "would have been apparent" had HCRE appealed the order denying withdrawal is really just a concession that there is no such analysis in the record.  In short, the Bankruptcy

---

[12] Nor did HCRE use "hedging language," as the quoted passages of the transcript from the Motion to Withdraw hearing make painfully clear.  *See* ROA.011550.  It is not surprising then that the Bankruptcy Court cites no examples of such "hedging" in its order.

47

Court's Reconsideration Order just invents reasons, never set forth on the record, to justify its denial of withdrawal.  That type of post hoc rationalization cannot withstand scrutiny.

As for the "but for" causation issue and the additional $375,000 in attorneys' fees and costs Highland incurred after it prevented HCRE's withdrawal, the Court merely repeated its finding, untethered to any evidence of record, that the Court was forced to order a trial on HCRE's POC because HCRE "refus[ed] to withdraw its proof of claim with prejudice to all future litigation on the issues raised in the proof of claim."  ROA.011552.  That conclusion is wrong for all the reasons discussed above—including that Highland wound up in a worse legal position than it would have been had it simply accepted HCRE's concessions at the withdrawal hearing or had the Bankruptcy Court exercised its considerable discretion to impose terms and conditions on the withdrawal.  *See supra* at 41-45.  Under these circumstances, the only "but for" cause of Highland's additional fees and costs was Highland's choice to keep litigating when HCRE wanted to stop, and the Bankruptcy Court's decision to side with Highland.  The Court's conclusion to the contrary is error.

\*   \*   \*

In the end, there is no evidence that HCRE did anything wrong—with respect to either the filing or the pursuit of its POC.  And the vast majority of the fees and

costs Highland incurred were caused not by HCRE but Highland's and the Bankruptcy Court's own choices.

## CONCLUSION

For these reasons, the Bankruptcy Court's Sanctions Order and Reconsideration Order should be reversed.

Dated: September 5, 2024                Respectfully Submitted,

                                        REICHMAN JORGENSEN
                                        LEHMAN & FELDBERG LLP

                                        */s/ Amy L. Ruhland*
                                        Amy L. Ruhland
                                        Texas Bar No. 24043561
                                        aruhland@reichmanjorgensen.com
                                        515 Congress Avenue, Suite 1900
                                        Austin, TX 78701
                                        Tel.: (737) 227-3102

                                        HOGE & GAMEROS. L.L.P

                                        Charles W. Gameros, Jr., P.C.
                                        Texas Bar No. 00796956
                                        bgameros@legaltexas.com
                                        6116 North Central Expressway, Suite
                                        1400
                                        Dallas, Texas 75206
                                        Tel.: 214-765-6002

                                        *Attorneys for NexPoint Real Estate
                                        Partners, LLC (f/k/a HCRE Partners,
                                        LLC)*

49

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 5, 2024, a true and correct copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.

*/s/ Amy L. Ruhland*
Amy L. Ruhland

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the type-volume limitations of Federal Rule of Bankruptcy Procedure 8015(h) as it contains 11,758 words, excluding the portions of the document exempted by 8015(g).

I further certify that this document complies with the typeface requirements of Rule 8015(a)(5) and the type-style requirements of Rule 8015(a)(7)(B) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

*/s/ Amy L. Ruhland*
Amy L. Ruhland

51